## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

BRADEN G.,[1]                                    Case No. 2:23-cv-2626

      Plaintiff,                              Sargus, J.
                                                 Bowman, M.J.
  v.

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.


### REPORT AND RECOMMENDATION

Plaintiff, Braden G. brings this action under 42 U.S.C. § 405(g) to seek review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for social security benefits. Proceeding through counsel, Plaintiff presents a single claim of error for this Court's review. The Commissioner has filed a response in opposition to Plaintiff's Statement of Errors, to which Plaintiff has filed a reply. For the reasons explained below, the Commissioner's finding of non-disability should be AFFIRMED.

### I. Summary of Administrative Record

The above-captioned case represents a judicial appeal of the denial of Plaintiff's most recent application for Supplemental Security Income ("SSI") benefits. Prior to the denial at issue, Plaintiff had filed an earlier application, dated February 22, 2018, alleging the onset of disability on April 6, 2017.[2] On September 20, 2019, Administrative Law

---

[1] Due to significant privacy concerns in social security cases, this Court refers to claimants only by their first names and last initials. *See* General Order 22-01.

[2] The undersigned limits discussion to the last two ALJ decisions. However, the record reflects other prior unsuccessful applications. (Tr. 95).

Judge ("ALJ") Amy Rosenberg held a video hearing concerning that earlier application. After that hearing, ALJ Rosenberg issued an adverse written decision, concluding that Plaintiff was not disabled between April 6, 2017 and the date of her decision on October 11, 2019. (Tr. 70-83). The Appeals Council denied further review on June 19, 2020, and Plaintiff did not further appeal. (Tr. 27).

Plaintiff filed a new application for SSI on August 26, 2020. In his 2020 application, Plaintiff alleges disability beginning on December 31, 2002, a time period that overlaps with the period or disability alleged in his 2018 application.[3] (*Id.*) After his 2020 application was denied initially and on reconsideration, Plaintiff again sought an administrative hearing. On June 15, 2022, ALJ Irma Flottman held a telephonic hearing at which Plaintiff voluntarily appeared and testified without representation; an impartial vocational expert also testified. Based on the evidence presented, ALJ Flottman issued an adverse written decision on September 12, 2022. (Tr. 27-41). The Appeals Council denied further review on June 21, 2023, leaving ALJ Flottman's decision as the final decision of the Commissioner. Proceeding through counsel in this Court, Plaintiff filed the above-captioned appeal.

Plaintiff was 46 years old on the date of his last hearing and remained in the same "younger individual age 18-49" age category through the date of the ALJ's decision. He has at least a high school education and testified that he currently lives with his sister. (Tr. 29). Plaintiff has not engaged in any substantial gainful activity, and has no past relevant work.

---

[3]SSI is not payable prior to the month following the month in which the application for benefits is filed. However, when a claimant alleges a longer period of disability, the ALJ will consider the complete medical history for the time period alleged. (Tr. 28, citing 20 C.F.R. §§ 416.335 and 416.912).

ALJ Flottman found that Plaintiff has the following severe impairments: "hypertrophic facet disease and spondylosis of the lumbar spine; cervical spine dysfunction; degenerative joint disease of the right hip; obesity; major depressive disorder; bipolar II disorder; post-traumatic stress disorder (PTSD); and, generalized anxiety disorder with panic attacks." (Tr. 30). The ALJ also determined that Plaintiff has nonsevere impairments of "intermittent pancreatitis, urinary retention, gastroesophageal reflux disease (GERD), osteopenia, hypertension, renal stones, hernia, and insomnia." (*Id.*) However, none of Plaintiff's impairments, either singly or in combination, met or medically equaled the severity of a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926). (Tr. 31).

The ALJ next determined that Plaintiff retains the residual functional capacity ("RFC") to perform a range of work at the light exertional capacity, but further limited as follows:

> [T]he claimant is limited to no more than frequent pushing or pulling with his right lower extremity. He can occasionally climb ramps and stairs. He can never climb ladders, ropes, or scaffolds. He can occasionally balance, stoop, kneel, crouch, and crawl. He can tolerate just occasional exposure to extreme cold and vibration. He should not work at unprotected heights, should not operate commercial motor vehicles, and should not operate or work in proximity to dangerous moving machinery. Mentally, the claimant can understand and remember simple 1-3 step tasks; can complete simple, short cycle tasks in a setting that does not have fast-paced demand (i.e., assembly line setting) where [he] can work away from the distractions of others; can superficially interact in the work setting. The claimant can work in a setting where there are well-defined work goals and can carry out a basic routine despite minor changes in the work setting. Claimant will need major changes explained in advance and gradually introduced to allow claimant time to adjust to the new expectations. Superficial interaction is defined as impersonal interaction, but adequate interaction to complete duties assigned.

(Tr. 33). Based upon testimony from the vocational expert ("VE"), the ALJ concluded that

Plaintiff remains capable of performing jobs that exist in significant numbers in the national economy, including the representative jobs of Marker, Garment Sorter, and Routing Clerk. (Tr. 40-41). Consequently, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act. (Tr. 41).

In this judicial appeal, Plaintiff argues that ALJ Flottman committed reversible error because she used an incorrect legal standard to evaluate ALJ Rosenberg's findings. I find no reversible error.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted).  In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also

exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.*  (citations omitted). *See also Biestek v. Berryhill*, 139 S. Ct.1148, 1154 (2019) (holding that substantial evidence is evidence a reasonable mind might accept as adequate to support a conclusion and that the threshold "is not high").

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Com'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920. A plaintiff bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits.  20 C.F.R. § 404.1512(a). Thus, a claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of

impairments, expected to last at least twelve months, that left him unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

### B.    Plaintiff's Claim

Plaintiff does not argue that he is entitled to an immediate award of benefits. Instead, Plaintiff's sole claim is that remand is required because the ALJ applied an incorrect legal standard when considering the prior adverse decision. According to Plaintiff, ALJ Flottman improperly considered herself "bound" to adopt ALJ Rosenberg's RFC findings, "framing her review of the evidence as a question of whether it supported a departure from ALJ Rosenberg's RFC." (Doc. 8 at 6, PageID 857). Although ALJ Flottman cited to *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997) in framing her standard of review, Plaintiff argues that reversal is required under the more recent formulation of the standard announced in *Earley v. Comm'r of Soc. Sec.,* 893 F.3d 929 (6th Cir. 2018).

### 1.  The Evolution of *Drummond*, AR 98-4(6) and *Earley*

In *Drummond*, the Sixth Circuit first held that principles of res judicata apply to both claimants and the Commissioner. In that case, Ms. Drummond was found to be capable of sedentary work at age 49 and was denied benefits. When she reapplied for benefits at age 50 - the age at which a presumption of disability would apply - the ALJ found she could perform medium work, <u>even though there was no evidence of any change but for the claimant's age</u>. The Sixth Circuit reversed, stating that absent evidence of "changed circumstances" relating to a claimant's condition, "a subsequent ALJ is *bound by* the findings of a previous ALJ." *Id.*,126 F.3d at 842 (emphasis added). In so holding, *Drummond* heavily relied on the similar fact pattern and "persuasive" reasoning of *Lively*

*v. Sec'y of HHS*, 820 F.2d 1391 (4th Cir. 1987).[4] Consistent with *Lively*, *Drummond* held that the burden is on the party seeking to alter the prior RFC finding, "to prove changed circumstances and therefore escape the principles of res judicata." *Id*. at 842. In so holding, the Sixth Circuit rejected the Commissioner's position that the agency "has unfettered discretion to reexamine issues previously determined absent new and additional evidence." *Id*.

After *Drummond*, the Social Security Administration issued Acquiescence Ruling 98-4(6) to provide guidance to agency adjudicators deciding cases within the Sixth Circuit.[5] *Id*., 63 FR 29771-01, 1998 WL 274052, 29773 (June 1, 1998). The text of AR 98-4(6) parallels the text of AR 94-2(4), an Acquiescence Ruling issued to provide similar guidance in the Fourth Circuit after the publication of *Lively*. Importantly, neither Acquiescence Ruling draws any distinction between true res judicata and application of the principles thereof. Thus, AR 98-4(6) instructs adjudicators as follows:

> [W]hen adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, *adjudicators must adopt such a finding from the final decision by an Administrative Law Judge or the Appeals Council on the prior claim* in determining whether the claimant is disabled with respect to the unadjudicated period *unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.*

---

[4]In *Lively*, the first ALJ denied benefits after finding that the claimant retained the RFC to perform light work. Two weeks later when she attained the age of 55, the claimant reapplied for benefits, anticipating an award under an age-related rule. Instead, a second ALJ denied benefits after finding that Lively could perform medium work. Finding "the record devoid of evidence that Lively's condition had improved within the span of two weeks," the Fourth Circuit held that principles of "finality and fairness" (a/k/a the principles of res judicata) required the Secretary "to shoulder the burden of demonstrating that the claimant's condition had improved" since the last decision. *See Drummond*, 126 F.3d at 842 (discussing *Lively*).

[5]Acquiescence Rulings are issued when a decision by a United States Court of Appeals "conflicts with [the agency's] interpretation of a provision of the Social Security Act or regulations," and "explain[s] how we will apply the holding…." 20 C.F.R. § 404.985(b). "An AR is therefore an administrative interpretation of a federal appellate decision." *Melvin v. Astrue*, 602 F.Supp.2d 694, 703 (E.D.N.C. 2009). An Acquiescence Ruling remains in effect unless it is rescinded.

*Id.* (emphasis added); *see also Blankenship v. Comm'r of Soc. Sec.*, 624 Fed. Appx. 419, 425 (6th Cir. 2015) ("Read together, *Drummond* and Acquiescence Ruling 98-4(6) clearly establish that a subsequent ALJ is bound by the legal and factual findings of a prior ALJ unless [Plaintiff] presents new and material evidence that there has been either a change in the law or a change in [Plaintiff]'s condition.").

In *Earley v. Comm'r of Soc. Sec.,* 893 F.3d 929 (6th Cir. 2018),[6] however, the Sixth Circuit clarified that *Drummond* was not as broad as it had been read to be by some courts and by the agency in AR 98-4(6). In that case, the ALJ had quoted *Drummond*'s language that he was "bound by" the prior RFC findings, language consistent with AR 98-4(6). *Earley* reversed to clarify or correct what it described as "some overstatement" in *Drummond. Id.,* 893 F.3d at 933. "[T]o correct overreading" of *Drummond*'s "bound by" phrasing, *Earley* emphasized the distinction between application of true res judicata and the <u>principles</u> of res judicata. *Id.* at 934. If Earley had filed a second application for *exactly* the same period of time, with "no cognizable explanation for revisiting the first decision, res judicata would bar the second application." *Id.* at 933. (emphasis added). But it was error for the ALJ to state that he was "bound" to give "preclusive effect" and "was *precluded* by" the prior ALJ's findings for a brand <u>new and unadjudicated</u> period of alleged disability. *Id.* at 932 (emphasis original). In other words, *Earley* stressed that res judicata bars only the same claim and that a claim for a new time period is not the same claim. *Id.* at 933. Thus, for each new period of disability, "the question before the ALJ is whether a preponderance of the evidence supports a decision to award benefits under the five-step

---

[6]Plaintiff's counsel herein represented Ms. Earley before the Sixth Circuit.

inquiry,… and on review whether substantial evidence supports that finding." *Id*., 893 F.3d at 932.

The *Earley* court explained that the principles of res judicata would still apply to the new period. But those principles "do not prevent … a fresh look to a new application containing new evidence or satisfying a new regulatory threshold that covers a new period of alleged disability while being mindful of past rulings and the record in prior proceedings." *Id*. at 931. Stated differently, when an individual files a new application for a new time period, an ALJ still should consider "[f]inality, efficiency, and the consistent treatment of like cases" – but only as guiding principles rather than a fait accompli. *Id*. at 933. "[I]t is fair for an administrative law judge to take the view that, absent new and additional evidence, the first administrative law judge's findings are a legitimate, *albeit not binding*, consideration in reviewing a second application." *Id*. at 933 (emphasis added). If the second application "introduces no new evidence or very little new evidence," the applicant "should not have high expectations about success." *Id*. "What's past likely will be precedent in that setting - as indeed it should be in a system designed to apply the law consistently to similarly situated individuals." *Id*. at 933-934. *Earley* sums up that "[f]resh review is not blind review." *Id.* at 934.

Just as *Drummond* relied on *Lively*, the *Earley* court leaned into the reasoning of another Fourth Circuit case, *Albright v. Comm'r of Soc. Sec.,* 174 F.3d 473 (4th Cir. 1999). *Earley* reasoned that in *Albright*, the Fourth Circuit "faced a problem almost identical to the one we face - the need to correct an overreading of a prior decision [*Lively*] with respect to this precise issue." *Id.*, 893 F.3d at 934.

> [T]he Fourth Circuit … clarified that, "[a]t its essence, *Lively* really has very little to do with preclusion." *Albright*, 174 F.3d at 477. Instead, it was "best

understood as a practical illustration of the substantial evidence rule" in which the prior factual finding was "such an important and probative fact as to render the subsequent finding to the contrary unsupported by substantial evidence." *Id*. at 477-78. *Albright* is to *Lively* what this case is to *Drummond*.

*Id.* Curiously, given its adoption of so much of *Albright*'s reasoning, *Earley* remained silent on the agency's [mis]interpretation of *Drummond* in AR 96-8(4). By contrast, when it clarified *Lively* in *Albright*, the Fourth Circuit squarely held that the nearly identical language in AR 94-2(4) "is not an accurate restatement" of Fourth Circuit law on administrative res judicata, and that the Social Security Agency therefore "is without justification to apply the Ruling." *Id*., 174 F.3d at 478.

Frankly, *Earley* cannot be reconciled with the admonition in AR 98-4(6) that an ALJ "must adopt" the prior ALJ's findings for a new period absent "new and material" evidence. But because AR 98-4(6) has not been rescinded,[7] ALJs continue to cite to it as well as to *Drummond* when adjudicating cases in this circuit, often (as ALJ Flottman did here) without additional citation to *Earley*. Given *Drummond's* instruction that an ALJ is "bound by" the prior decision absent changed circumstances, and the language of AR 98-4(6) suggesting that an ALJ "must adopt" the prior ALJ's findings,[8] it is no wonder that ALJs have struggled to simultaneously apply only the "principles" of res judicata in the way that *Earley* demands.

---

[7]Agency regulations require an AR to be rescinded as obsolete if a circuit "overrules or limits itself on an issue that was the basis" for the AR in question. *See* 20 C.F.R. § 404.985(e)(2). In response to *Albright*, the Commissioner rescinded AR 94-2(4) and published AR 00-1.

[8]Regardless of the agency's interpretation in AR 98-4(6), this Court must follow its own interpretation of controlling law. *See Jackson v. Apfel*, 74 F. Supp.2d 698, 700 n. 3 (E.D. Mich. 1999). When in conflict, controlling Sixth Circuit case law necessarily trumps an agency's interpretation. *Hutchison for Hutchison v. Chater*, 99 F.3d 286, 287 (8th Cir. 1996) ("Regardless of whether the Commissioner formally announces her acquiescence,… she is still bound by the law of this Circuit and does not have the discretion to decide whether to adhere to it,") (citations omitted).

Yet many trial courts have also struggled to apply *Earley*. On the one hand, it is easy to understand that res judicata applies only when a claimant submits an identical application for the same time period. And it is equally clear that prior findings should be considered along with any new evidence when deciding whether a claimant has become disabled since the last decision. But the devil is in the details. For example, is it reversible error under *Earley* to use the prior RFC findings as a "starting point" or as presumptively correct even if they are not strictly binding?

Here for instance, ALJ Flottman included rote language lifted from *Drummond* and AR 98-4(6) that "in the absence of new and material additional evidence or changed circumstances, a subsequent Administrative Law Judge is *bound by* the findings of a previous Administrative Law Judge's or Appeals Council's decision." (Tr. 30; *accord* Tr. 34 (emphasis added)). Citing *Earley*, Plaintiff argues:

> While ALJ Flottman provided a review of the newly submitted evidence, she did so against the backdrop of ALJ Rosenberg's prior findings, framing her review of the evidence as a question of whether it supported a departure from ALJ Rosenberg's RFC. In short, ALJ Flottman did not merely consider ALJ Rosenberg's prior findings as a legitimate - albeit not binding - consideration, but rather that she was bound by them, absent new and material evidence or changed circumstances.

(Doc 8 at 6, PageID 857). Plaintiff's position that remand under *Earley* is <u>required</u> when an ALJ uses the "bound by" language rests on the premise that an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

### 2. Post-*Earley*: Determining When Remand is Required

Plaintiff cites to more than a dozen post-*Earley* decisions that support his view that reversal is mandated whenever an ALJ states that he or she is giving presumptive weight

11

to an ALJ's prior findings or uses the prior findings as a starting point. *See Ferrell v. Berryhill*, No. 1:16-cv-00050-PLR, 2019 WL 2077501, at *5 (E.D. Tenn. May 190, 2019) (holding that *Earley* requires an "opportunity for a full hearing*, with no presumptions applied*, when the claim covers a new period of time not addressed in the prior hearing.") (emphasis added). Plaintiff's authority includes unpublished cases from this district. *See e.g.*, *Robert K. v. Comm'r of Soc. Sec.*, No. 3:22-cv-00091-CHG, 2023 WL 5662785, at *5-6 (S.D. Ohio Sept. 1, 2023) (concluding *Earley*'s mandate to give the new period a "fresh review" means that an ALJ "may not use that prior decision as a starting point for their analysis or otherwise presume that it will dictate the outcome of the pending application."); *Nadia A.T. v. Comm'r of Soc. Sec.*, No. 3:22-cv-12-PBS, 2023 WL 2401723 at *4-5 (S.D. Ohio, March 8, 2023) (same); *Maynard v. Comm'r of Soc. Sec.*, No. 2:18-cv-959-GCS-KAJ, 2019 WL 3334327, at *6 (S.D. Ohio July 25, 2019), report and recommendation adopted, No. 2:18-cv-959, 2019 WL 3891859 (S.D. Ohio Aug. 16, 2019).

But not every court agrees that an ALJ's inclusion of a holdover quotation from *Drummond* and/or AR 98-4(6) constitutes an automatic error of law requiring remand, or that an ALJ is forbidden from using the prior RFC determination as a starting point. To the contrary, a growing number of courts have looked beyond an ALJ's inclusion of rote language to examine the ALJ's *actual* analysis. The undersigned finds persuasive the post-*Earley* decisions that reject Plaintiff's view in favor of a more holistic approach. Among those decisions are three unpublished decisions in which the Sixth Circuit itself has endorsed a more nuanced view of *Earley*.[9]  For example,

_____

[9] Plaintiff's counsel previously appeared in many of the cases that he cites in his favor. But he also previously represented the plaintiffs in many of the cases that have flatly rejected his arguments, including the three

[i]n *Dugan v. Commissioner of Social Security*, an early post-*Earley* decision, the Sixth Circuit cited to *Drummond* and noted that "[w]hen the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances." 742 F. App'x 897, 901–02 (6th Cir. 2018). The Court explained that "[i]n such cases, '[a]bsent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ.'" *Id.* The Court found that the ALJ's pre-*Earley* analysis satisfied the legal standard because she ultimately found new and material evidence of medical improvement, which meant she was not bound by a prior ALJ's determination. *Id.* Said simply, citation to *Drummond* was not in and of itself enough to warrant remand. This Court, as well as other courts in the circuit, have come to the same conclusion.

*Lisa F. v. Comm'r of Soc. Sec.*, No. 2:23-cv-2981-MHW-KAJ, 2024 WL 1464444, at *4 (S.D. Ohio, Feb. 22, 2024), Report and Recommendation adopted at 2024 WL 1241915 S.D. Ohio (March 22, 2024) (stating that "this Court has repeatedly explained that although citation to *Drummond* without *Earley* raises a yellow flag, the ultimate question is whether the ALJ freshly reviewed the evidence," internal quotation marks and additional citations omitted); *accord Tammy T. v. Comm'r of Soc. Sec.*, No. 1:22-cv-248-KLL, 2023 WL 3432299, *6 (S.D. Ohio May 13, 2023) (finding no violation of *Earley* where the ALJ "thoroughly reviewed all the evidence and concluded that the new evidence did not establish greater mental limitations than those found in the 2015 RFC."); *Ollis v. Comm'r*, No. 1:18-cv-331-TSB-SKB, 2019 WL 3561775, at *4 (S.D. Ohio, Aug. 6, 2019) (holding that ALJ "satisfied the principles" of *Earley* by "considering the prior evidence, the prior ALJ's decision, and the later submitted evidence."), R&R adopted at 2019 WL 4733581 (S.D. Ohio Sept. 28, 2019); *Washington v. Comm'r*, No. 1:17-cv-773-SKB, 2019 WL 1367736, at *5 (S.D. Ohio, March 26, 2019) (affirming in part because "the ALJ reviewing the second application showed that he did not merely rely upon the earlier denial.").

---

Sixth Circuit decisions discussed herein.

In *Krista L. v. Comm'r of Soc. Sec.*, No. 3:23-cv-144-MJN-KLL, 2024 WL 1596323, at *5 (S.D. Ohio, April 12, 2024) (R&R pending), Magistrate Judge Karen Litkovitz reviewed *Dennis D. v. Comm'r of Soc. Sec.*, No. 23-3667, 2024 WL 1193662 (6th Cir. Mar. 20, 2024), a recent case in which the appellate court also rejected counsel's arguments:

> In *Dennis D.*, the Sixth Circuit examined whether the ALJ in that case treated his review of the new disability application as if he were bound by the prior disability application, thereby denying the claimant the "fresh look" *Earley* requires. The Court of Appeals determined that where an ALJ engages in an in-depth review and analysis of (1) the new evidence related to the claimant's current claim period, and (2) the evidence and findings from the prior decision, *Earley's* "fresh look" is satisfied. *Id.* at *4. The Court of Appeals found that "it is the responsibility of the ALJ reviewing the claim for the later unadjudicated period to determine how much weight to accord both the prior decision and any newly submitted evidence; this includes the effect of a new regulatory threshold, if applicable." *Id.* at *4….
>
> The Sixth Circuit also rejected the view advanced by plaintiff here that it is improper for the subsequent ALJ "to measure the new medical evidence 'against the backdrop' of the prior RFC finding instead of assessing the new evidence on its own merits." *Dennis D.*, 2024 WL 1193662, at *6 (citing *Nadia A.T. v. Comm'r of Soc. Sec.*, No. 3:22-cv-12, 2023 WL 2401723, at *4 (S.D. Ohio Mar. 8, 2023)). The Court of Appeals found "it is perfectly acceptable for a subsequent ALJ to presume the accuracy of a prior finding," for this promotes "finality, efficiency, and consistent treatment of like cases." *Dennis D.*, 2024 WL 1193662, at *6.
>
>> [T]he suggestion that an ALJ considering a subsequent application should not evaluate a claimant's new records for evidence of a significant change in relation to a prior valid finding strikes us as an overly broad reading of *Earley*. Presuming accuracy is not the same as treating prior findings as binding.

*Id.*, quoting *Dennis D., supra* at *6.  Judge Litkovitz pointed out in a footnote that in holding that it was acceptable to "presume" the accuracy of prior findings, *Dennis D.* appeared to abrogate *Nadia A.T. v. Comm'r of Soc. Sec.*, No. 3:22-cv-12-PBS, 2023 WL 2401723 at *4-5 (S.D. Ohio, March 8, 2023) and similar authority in which some courts have held that

14

remand is required if an ALJ uses the prior ALJ's RFC determination as "a mandatory starting place." *Id*. at n.5.

Last month, the Sixth Circuit rejected Plaintiff's arguments in a third case. In *Gooden v. Comm'r of Soc. Sec.*, No. 23-3927, 2024 WL 2830817 (6th Cir. June 4, 2024), a different three-judge panel cited to *Dennis D* as highly persuasive and fully consistent with *Earley*.

> Gooden claims that the second ALJ failed to give Gooden's second application an independent "fresh look," as required under our precedent. … As evidence, Gooden points to the ALJ's statement that she "must adopt" the first ALJ's "residual functional capacity" unless "there is new and material evidence or changed circumstances" or "there has been a change in the relevant law." Gooden argues that this error alone requires reversal and, in the alternative, that the error resulted in the second ALJ giving too much weight to opinions from two state mental-health consultants.

*Id*., 2024 WL 2830817, at *3. *Gooden* again rejected the notion that it was error for the second ALJ to use the first ALJ's determinations as a starting point.

> [I]if the new application covers a new time period, the second ALJ *may* abide by the first ALJ's determinations as long as the claimant has failed to present "evidence of a change in condition" or satisfy a "new regulatory threshold." *Id.* This makes sense because, in such a case, "[n]othing ha[s] changed between the end of the first application and the beginning of the second one."

*Id*., at *4 (quoting *Earley*, 833 F.3d at 932, emphasis original).

As in *Dennis D.,* the *Gooden* court explained that a reviewing court should look beyond "rote language" to examine the ALJ's actual analysis:

> [O]n appeal, we need determine only whether the second ALJ *actually* afforded the new application a "fresh look" under *Earley*, notwithstanding rote recitation of a legal standard suggesting otherwise." … Despite Gooden's assertion that we "must reverse" if the ALJ applied an incorrect legal standard, *Earley* requires remand only when the judge *actually applied* incorrect res judicata principles. … So under our precedent, the key

question is whether the second ALJ treated review of the new application "as if" they were "bound by the prior decision." *Dennis D.*, 2024 WL 1193662, at *4. If not, then she did not reversibly err.

*Id*. (emphasis original).

In short, the Sixth Circuit confirmed that to determine whether an ALJ's recitation of the "bound by" language constitutes harmless "scrivener's error" or supports reversal requires close examination of the record. *Id*. at 4. In *Gooden*, reversal was not warranted because the second ALJ fully considered all new evidence, medical records, and medical episodes from the period that postdated the prior denial. In fact, the second ALJ expressly found "new and material evidence" that supported a departure from the prior findings. "[R]egardless of whether the second ALJ recited a standard indicating she might be bound in other cases, in *this* case she expressly rejected the first opinion's findings and went on to make an independent assessment of Gooden's claim." *Id*. at *5 (emphasis original). Therefore, the "'real finding' …was a fresh one, regardless of the standard the ALJ recited at the beginning of her opinion." *Id. Gooden* emphasized "[t]he depth of the judge's reasoning" including that: (1) the second ALJ "stated anew" the five sequential steps required to determine disability; (2) the second ALJ found slightly different impairments at Step 2; (3) the second ALJ "balanced new testimonial evidence that Gooden provided… against other medical evidence"; and 4) the second ALJ "focused on medical evidence from the period after the first decision" and "factored in scores of new datapoints," which resulted in new RFC limitations. *Id*.

### 3. Examination of ALJ Flottman's Analysis

As in *Dugan*, *Dennis D.* and *Gooden*, ALJ Flottman's rote recitation of the "bound by" language does not constitute reversible error in this case. As the Commissioner points

out, Plaintiff's most recent SSI application sought in part to relitigate the <u>same</u> period of alleged disability on which ALJ Rosenberg had already rendered a decision. Specifically, ALJ Rosenberg determined that Plaintiff was not disabled between April 6, 2017 and the date of her decision on October 11, 2019.[10] In his August 26, 2020 application, Plaintiff re-alleged disability beginning on December 31, 2002 – a time period that included the period previously adjudicated by ALJ Rosenberg. Therefore, for the portion of alleged disability that was previously adjudicated through October 11, 2019, administrative res judicata applied. In other words, ALJ Rosenberg's RFC findings were binding through October 11, 2019.

It is only for the unadjudicated time - meaning October 12, 2019 through the new June 15, 2022 decision - that ALJ Flottman was barred from applying strict res judicata and was instead required to consider only the "principles" of res judicata in a non-binding fashion. Turning to her analysis of the unadjudicated period, ALJ Flottman stated that she found "sufficient new and material evidence to support different mental limitations than previously adjudicated," and that the mental RFC was "not adopted as a *Drummond* precedent." (Tr. 30). As in *Gooden*, then, it is clear that ALJ Flottman expressly disavowed any reliance on ALJ Rosenberg's prior mental RFC findings. Her in-depth analysis of the evidence concerning Plaintiff's mental impairments, particularly as related to the period that post-dated the prior ALJ's decision, confirms the lack of error in this regard.

That leaves Plaintiff's physical ALJ. Plaintiff claims error because ALJ Flottman ultimately adopted the prior ALJ's physical RFC. (Tr. 39). But the fact that a second ALJ

---

[10]At the time of her decision, ALJ Rosenberg was also considering a newly alleged disability period following a prior denial of disability. ALJ Rosenberg cited to *Drummond* but acknowledged it had been modified by *Earley*.

adopts the same RFC findings as a prior ALJ, standing alone, does not violate *Earley* because it says nothing about how the ALJ reached that decision. After all, "the second ALJ *may* abide by the first ALJ's determinations as long as the claimant has failed to present "evidence of a change in condition" or satisfy a "new regulatory threshold." *Gooden* at *4 (quoting *Earley*, 893 F.3d at 932).

Here, ALJ Flottman's *actual* analysis confirms that she took a "fresh look" at all relevant evidence before she determined that Plaintiff's physical limitations had not changed since October 2019. Like in *Gooden*, ALJ Flottman began her opinion by stating anew the five sequential steps she was required to determine. Also like *Gooden*, she found slightly different severe and non-severe impairments at Step 2. *Compare*, *e.g.*, ALJ Rosenberg's findings of "hypertrophic facet disease of the lumbar spine; degenerative joint disease of the right hip" (Tr. 72) with ALJ Flottman's findings of "hypertrophic facet disease and spondylosis of the lumbar spine; cervical spine dysfunction; degenerative joint disease of the right hip; obesity" (Tr. 30). In addition, ALJ Flottman stated that she "cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from medical sources." (Tr. 39).

Critically, nearly all of ALJ Flottman's analysis focuses on treatment records that post-date ALJ Rosenberg's decision, which records reflected a steady gait and multiple other normal objective findings. (*See* Tr. 37-38). Despite subjective pain complaints, some clinical signs of pain, and 2020 EMG studies that showed mild to moderate nerve issues, Plaintiff had no reduction in range of motion, with normal reflexes, coordination and muscle tone. (*Id.*) ALJ Flottman also discussed Plaintiff's March 2021 physical

18

consultative examination, in which Dr. Provaznik opined that Plaintiff's musculoskeletal discomfort was related more to debility than to degeneration, with a relatively unremarkable physical examination. (Tr. 38). The ALJ discussed similar normal examination findings in April and May 2021. (*Id.*) Summing up the evidence that Plaintiff offered to show disability during the new unadjudicated period, ALJ Flottman wrote:

> [T]hough the evidence documents the claimant to have several orthopedic issues and obesity, his physical examinations are generally normal aside from some shoulder pain. Additionally, the opinions of the physical consultative examiner show the claimant to be affected by debility rather than degeneration.

5(Tr. 39). Plaintiff offered his own testimony in support of greater limitations. But the ALJ expressly discounted Plaintiff's subjective complaints. (Tr. 38-39).

Plaintiff does not point to any objective or clinical medical evidence, or to any medical opinion evidence, that would support greater limitations than the physical RFC as determined. *See Krista L.*, 2024 WL 1596323, at *6 (noting that aside from citation to the pre-*Earley* legal standard, the plaintiff had not pointed to any evidence of record that the ALJ failed to consider). Instead, Plaintiff urges this Court to reverse because the non-examining agency reviewers themselves allegedly failed to take a sufficient "fresh look" at the evidence before adopting the prior physical RFC findings. But even if the agency consultants did not sufficiently review the record for evidence of changes in Plaintiff's physical RFC (a premise that the undersigned accepts only for purpose of argument), that failure would constitute harmless error because ALJ Flottman's analysis of their opinions is substantially supported.

As discussed, ALJ Flottman found the examining consultant's opinion to be persuasive because his examination findings were "generally consistent with the overall

evidence, showing repeatedly unremarkable physical examinations." (Tr. 39). Turning to the non-examining consultants, she found their opinions to be persuasive both because they were consistent with the opinions of the recent examining consultant, and also were "consistent with the medical evidence of record, which does not show any worsening of the claimant's physical condition since the prior decision." (*Id*.) Thus, the physical RFC as determined is substantially supported. *Accord Gooden*, 2024 WL 2830817 at *5-6 (rejecting claim that consultants overly relied on prior ALJ's findings because it is "perfectly acceptable…to presume the accuracy of a prior finding" and because substantial evidence, including a recent consultative examination report, supported both the consultants' findings and the weight given to those findings) (internal quotation marks and citations omitted); *Dennis D*., 2024 WL 1193662, at *6 (even if the reviewing physicians failed to conduct a fresh review because they believed they were bound by the prior RFC, the ALJ still reached an independent determination).

### III. Conclusion and Recommendation

For the reasons stated, **IT IS RECOMMENDED THAT** the decision of the Commissioner be **AFFIRMED** as supported by substantial evidence and that this case be **CLOSED**.


 *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

BRADEN G.,                                          Case No. 2:23-cv-2626

        Plaintiff,                          Sargus, J.
                                                   Bowman, M.J.
   v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).